UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CURVES INTERNATIONAL, INC.,

                             Plaintiff,                      **REPORT AND**
                                                          **RECOMMENDATION**
          -against-                            CV 11-2986 (ADS) (GRB)

DERRICK NEGRON,

                             Defendant.
----------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

Before the undersigned is a motion for default judgment made by Curves International, Inc. ("plaintiff"), which has been referred to the undersigned by District Judge Arthur D. Spatt to issue a report and recommendation as to whether the motion for a default judgment should be granted, and if so, whether an injunction and attorneys' fees and costs should be awarded. Docket Entry ("DE") [14]. Plaintiff has requested an award of attorney's fees and costs and that a permanent injunction be entered against the defendant. For the reasons set forth herein, it is respectfully recommended that plaintiff's motion for default judgment be GRANTED and that plaintiff be awarded $15,000 in attorneys' fees and $573.10 in costs for the aggregate sum of $15,573.10, and that plaintiff's application for an injunction be DENIED.

## BACKGROUND

Plaintiff, a Texas corporation with its principal place of business in Texas, is a franchisor of CURVES® fitness centers, with each franchise featuring a unique thirty-minute fitness program designed for women. Complaint ("Compl.") ¶¶ 1, 12, DE [1]. Plaintiff owns the federally-registered CURVES® trademarks, service marks, logos and derivations (collectively

the "Marks"), as well as the CURVES® fitness system, which sells fitness and weight loss services and products to the public under the CURVES® Marks. *Id.* at ¶13. On October 11, 2005, Derrick Negron ("defendant") and Wendy Negron, entered into a franchise agreement with plaintiff (the "Franchise Agreement"), whereby they each received the license and right to operate a CURVES® franchise using the CURVES® trademarks and business system, in a limited area defined within the Franchise Agreement as the "Brentwood, New York – east area." *Id.* at ¶ 16, Motion for Default Judgment ("Def. Mot."), Ex. 1 Declaration of Peter G. Siachos, Esq. In Support of Curves International, Inc.'s Request for Default Judgment Against Derrick Negron and Wendy Negron ("Siachos Decl."), Ex. C CURVES® Franchise Agreement, DE [22]. Following the execution of the Franchise Agreement, defendant received extensive training from Curves in exercise physiology, nutritional counseling, marketing, sales, business systems, and instructions on the use of the equipment. Compl. at ¶¶ 19-20. Curves also provided defendant with a Confidential Operations Manual, marketing and advertising material, and business forms and other confidential materials. *Id.*

On September 12, 2006, less than a year after entering into the Franchise Agreement, defendant and Wendy Negron entered into an Assignment of Franchise Agreement and Guaranty ("Assignment Agreement") with AMR Fitness, Inc. ("AMR"), which Curves consented to. *Id.* at 17; Def. Mot., Ex. D. The Assignment Agreement called for defendant to personally guarantee any and all debts, liabilities, and contractual obligations of AMR, the assignees, but not limited to the Franchise Agreement's non-competition provisions. Compl. at ¶ 18; Def. Mot., Ex. D.

The Franchise Agreement was for a period of five years, with an option for renewal. *Id.* at ¶ 26. Defendant opted not to renew the Franchise Agreement, and it expired on October 11, 2010. *Id.* at ¶ 27. Upon its expiration, the Franchise Agreement called for, among other things,

the return of all printed material furnished to defendant by Curves, including manuals, advertising materials, and the like. *Id.* at ¶ 28. Further, the Franchise Agreement also included a covenant not to compete upon its non-renewal. *Id.* at ¶ 31. Defendant agreed to refrain for a period of one year from participating in or deriving any sort of benefit from any business similar to that of a Curves facility operating within ten miles of an area specifically identified in the Franchise Agreement. *Id.* Defendant also agreed that for that same one year period, defendant would not (1) employ, seek to employ, or induce away any person employed by Curves or any one of its franchises; (2) interfere with or attempt to interfere with any business relationships or advantages of Curves or any other Curves' franchisee; (3) use any confidential information from Curves' manuals or system in any similar business; (4) use the Curves' Marks, manuals, or system in any way to engage in, participate in, or derive any benefit from any similar business; (5) divert or attempt to divert any customer or business from Curves or any of its franchises; and (6) solicit or endeavor to obtain business of any person who shall have been a customer of any other Curves' franchisee. *Id.* at 32; Def. Mot., Siachos Def. Decl., Ex. C CURVES® Franchise Agreement, Article 20. Furthermore, pursuant to Articles 10, 19(A), and 22(L) of the Franchise Agreement, defendant agreed to compensate Curves for any damages, costs, and expenses, including reasonable attorneys' fees incurred by Curves in enforcing the Franchise Agreement or as a result of the default of any of its terms. Compl. at 33, Def. Mot., Siachos Def. Decl., Ex. C CURVES® Franchise Agreement, Articles 10, 19(A), 22(L).

On June 22, 2011, plaintiff commenced the instant action alleging, *inter alia*, that defendant breached the Franchise Agreement and the Covenant Not to Compete.[1]  DE [1]. On

---

[1] The Complaint originally named Wendy Negron and AMR Fitness, Inc. as defendants along with Derrick Negron. DE [1]. However, on February 2, 2012, Judge Spatt executed a Consent Order, stipulated to by plaintiff and Wendy

July 12, 2011, defendant was served with a copy of the Complaint, but failed to answer or otherwise move. DE [7]. On July 29, 2011, plaintiff moved for entry of default judgment, and on August 1, 2011, the Court clerk noted the default. DE's [8], [11]. On September 29, 2011, plaintiff moved for a default judgment and damages against defendant, and on October 21, 2011, Judge Spatt referred the motion for default judgment and whether injunctive relief and attorneys' fees and costs should be awarded to Magistrate Judge William D. Wall for a recommendation.[2] DE's [13], [14].

## DISCUSSION

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining a judgment against the defaulting party. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the Clerk of the Court, upon notification from the party seeking affirmative relief, enters default against the party that has failed to plead or otherwise defend in the action. Fed. R. Civ. P. 55(a); *Priestley*, 647 F.3d at 504-05. Second, the plaintiff must seek a judgment under Rule 55(b), following one of two procedures. The plaintiff may request that the Clerk of the Court enter judgment if the plaintiff's claim is for a sum certain (or a sum that can be made certain by computation), the defendant has failed to appear, and the defendant is neither a minor nor an incompetent. Fed. R. Civ. P. 55(b)(1); *Priestley*, 647 F.3d at 505. In all other cases, the party seeking a judgment by default must apply to the court pursuant to Rule 55(b)(2). *Priestley*, 647 F.3d at 505.

Plaintiff now applies to the Court pursuant to Rule 55(b)(2) for entry of a default

---

Negron, releasing Wendy Negron from the action, and on February 14, 2012, Judge Spatt issued an Order granting plaintiff's voluntarily dismissal of AMR Fitness, Inc. DE's [28], [29].

[2] On November 17, 2011, this matter was transferred to the undersigned from Magistrate Judge William D. Wall. *See* E-Order 11/17/2011.

judgment in its favor. In light of defendant's default, the Court accepts the factual allegations in the complaint as true, except those relating to damages, and draws all reasonable inferences in plaintiff's favor. *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). However, the "district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain Corp.*, 653 F.2d at 65. Furthermore, the district court does not automatically accept the allegations of the complaint relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Although an evidentiary hearing under Rule 55(b)(2) is not required, plaintiff must establish through affidavits or other evidence "a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

Plaintiff has satisfied the procedural prerequisites to a default judgment. After defendant failed to appear in this action, plaintiff sought notation of defendant's default, which the Court clerk so entered. *See* DE [11]. Plaintiff then moved the Court for default judgment. *See* Def. Mot, DE [13].

### I.     Default Judgment

The Complaint establishes the elements for a claim for breach of contract. "To make out a viable claim for breach of contract a Complaint need only allege (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by

the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[3] *Valero Mktg. & Supply Co. v. Kalama Int'l Liabl. Co.,* 51 S.W.3d 345, 251 (Tex. App. 2001). The allegations of the complaint establish the existence of an agreement between the plaintiff and defendant, and the plaintiff's consent for defendant to use the Curves logos, business model and confidential materials pursuant to the agreement establishes adequate performance by the plaintiff. The defendant's failure to return the materials constitutes a breach of the agreement, and plaintiff has sustained damages in the form of loss of its trade secrets and confidential information. Therefore, when taken as true, the above allegations adequately establish defendant's breach of the Franchise Agreement.

## II. Damages

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound*, 973 F.2d at 158. To establish damages upon a default, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted). It is proper for the Court to "rely on detailed affidavits or documentary evidence … to evaluate the proposed sum." *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

### a. Permanent Injunctive Relief

The Court may issue an injunction on a motion for default judgment upon a showing by

---

[3] Pursuant to Section 22(C)(1) of the Franchise Agreement, Texas law governs interpretation and construction of the Franchise Agreement. *See* Def. Mot., Siachos Def. Decl., Ex. C CURVES® Franchise Agreement, Section 22(C)(1).

the moving party that it is entitled to injunctive relief under the applicable statute, and that it meets the prerequisites for the issuance of an injunction. *See La Barbera v. Bestech Transport, LLC*, No. CV 07-4699, 2011 U.S. Dist. LEXIS 40131, at *14-15 (E.D.N.Y. Mar. 8, 2011); *Local 348 Health & Welfare Fund v. Milmar Food Group, LLC*, No. CV-05-3459, 2006 U.S. Dist. LEXIS 19756, at *18 (E.D.N.Y. Mar. 24, 2006).

Because the Franchise Agreement provides that Texas law governs we must analyze plaintiff's request for injunctive relief pursuant to Texas law. Under Texas law, a breach of a covenant not to compete is enforceable by issuance of a permanent injunction. *See* TEX. BUS. & COM. CODE ANN. §§ 15.50 – 15.52. Covenants not to compete are enforceable if they meet the requirements set out in the Covenants Not to Compete Act ("Act"). *See id.* To be enforceable, the covenant must be "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made," and any "limitations as to time, geographical area, and scope of activity to be restrained" must be reasonable and must not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise. *Id.* "To be entitled to a permanent injunction, the requesting party must plead and prove the following: (1) a wrongful act; (2) imminent harm; (3) irreparable injury; and (4) no adequate remedy at law." *Salas v. Chris Christensen Sys., Inc.*, 2011 Tex. App. LEXIS 7530, at *18 (Tex. App. Sept. 14, 2011) (citing *Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 742 (Tex. App. 2002). However, "[a]n injunction will not be issued to prevent injury that is purely conjectural or speculative." *Id.*

The Texas inquiry employs a conjunctive analysis, thus plaintiff must meet all the evidentiary prongs for a successful argument. However, plaintiff's motion for a permanent injunction against defendant fails on the first prong of the Texas analysis because plaintiff concedes in its motion papers that "Curves has no reason to believe that Derrick Negron is

7

engaged in the operation of "Ultimate Sweat Zone" with Wendy Negron . . . ."[4] Memorandum of Law in Support of Plaintiff Curves International, Inc.'s Motion for Default Judgment ("Def. Memo") at 13, DE [21]. Plaintiff admits that defendant has not engaged in a wrongful act.

Further, no imminent harm has been demonstrated because imminent harm exists in situation in which there is "actual injury, the threat of imminent harm, or another's demonstrable intent to do that for which injunctive relief is sought." *Perales v. Riviera*, 2003 Tex. App. LEXIS 6331, at *6, n.2 (Tex. App. July 24, 2003) (citing *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 716 (Tex. App. 2001). "Injunctive relief is improper where the party seeking the injunction has a mere fear or apprehension of the possibility of injury." *Id.* Plaintiff has failed to provide any evidence that defendant has violated or has any intention of violating the non-compete covenant, thus plaintiff has failed to demonstrate that imminent harm exists. Because plaintiff has failed to make any showing as to these necessary elements, I recommend that plaintiff's request for injunctive relief be denied.

### b. Attorney's Fees and Costs

Pursuant to the terms of the Franchise Agreement and the Assignment Agreement, defendant agreed that:

> [i]n the unlikely event that a dispute occurs or an action in law or equity arises between Curves and Franchisee concerning the operation, enforcement, construction or interpretation of this Agreement, Curves, if it prevails on most issues, shall be entitled to recover reasonable attorney's fees, court costs, and expenses incurred in the action

Def. Mot., Siachos Def. Decl., Ex. C CURVES® Franchise Agreement, Article 22(L). Here, by achieving the recommendation of an entry of default judgment against defendant, plaintiff's

---

[4] When plaintiff filed the instant motion, Wendy Negron was still a party in the action. Subsequent to its filing, Wendy Negron and plaintiff entered into a Consent Order releasing her from this matter. DE [28]. Plaintiff's default motion provides evidentiary support that Ms. Negron operated a fitness center, Ultimate Sweat Zone, in violation of the non-compete covenant. *See generally* Def. Memo., DE [21].

counsel succeeded in their efforts.

The Second Circuit has held that courts are to award counsel the "presumptively reasonable fee," which is determined by multiplying the reasonable hourly rate by the number of reasonably expended hours. *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).

A reasonable hourly rate is "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008)). The court should also consider the following case-specific factors in determining the reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). In calculating the presumptively reasonable fee, "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons*, 575 F.3d at 174 (citation and internal quotation marks omitted).

In the Eastern District of New York, "hourly rates for attorneys . . . have [normally] ranged from $200 to $350 an hour for partners, $200 to $250 for senior associates with four or

more years of experience, $100 to $150 an hour for junior associates with one to three years of experience, and $70 to $80 for legal assistants." *Crapanzano v. Nations Recovery Ctr., Inc.*, No. 11-CV-1008, 2011 U.S. Dist. LEXIS 76759, *4 (E.D.N.Y. June 29, 2011), *adopted by* 2011 U.S. Dist. LEXIS 76665 (E.D.N.Y. July 14, 2011) (citation omitted); *see also Local 282, Int'l Bhd. of Teamsters v. Pile Found. Constr. Co.*, No. 09-cv-4535(KAM)(LB), 2011 U.S. Dist. LEXIS 86644, at *33 (E.D.N.Y. Aug. 5, 2011) ("Recent prevailing hourly rates in the Eastern District are: (1) between two hundred dollars ($200.00) to four hundred dollars ($400.00) for partners; (2) between one hundred dollars ($100.00) to two hundred ninety-five dollars ($295.00) for associates; and (3) between seventy dollars ($70.00) to eighty dollars ($80.00) for legal assistants, including paralegals, or legal interns.") (quoting *Szczepanek v. Dabek*, No. 10-CV-2459, 2011 U.S. Dist. LEXIS 23458 (E.D.N.Y. Mar. 7, 2011)).

Here, plaintiff seeks to recover fees for six individuals. Peter G. Siachos, a partner, purportedly billed at a rate of $320.00 per hour, however there are numerous entries on the invoices submitted to the Court with Mr. Siachos' rate billed at $360 per hour. One associate, Erin L. Henderson, billed at $275 per hour and Elizabeth Elices, billed at a $225 per hour. The firm charged for two former summer associates: Max Dilendorf billed at $185 per hour and Adam Hoffman, billed at $175 per hour. Matt Gallo, a law school intern, billed at $175.00 per hour. Def. Mot. Siachos Decl., Ex. G. Plaintiff's counsel has failed to provide the Court with *any* information regarding the experience, reputation, and ability of the attorneys involved with this matter.

Additionally, the Court does not find that rates charged by plaintiff's counsel for the work of Max Dilendorf, Max Hoffman and Matt Gallo to be reasonable. Charging between $175 and $185 per hour for work done by legal students is inappropriately high and does not reflect

"what a reasonable, paying client would be willing to pay" for such legal services rendered. *See Arbor Hill,* 493 F.3d at 112. The prevailing hourly rate for interns and non-attorneys in the Eastern District of New York is between $70 to $80. *See, e.g., Crapanzano*, 2011 U.S. Dist. LEXIS 76759, *4 (finding $70 to $80 to be a reasonable hourly rate for law student interns in the E.D.N.Y.); *Moon v. Kwon,* No. 99 Civ. 11810, 2002 U.S. Dist. LEXIS 21775, 2002 WL 31512816 (S.D.N.Y. Nov. 8, 2002) (finding that an $80 hourly fee for work done by law school interns was a "reasonable rate."). For the reasons set forth above, the Court finds that an appropriate fee for work done by legal students in this case is $80 per hour – less than 50% the rate sought here.

A fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1160-1161 (2d Cir. 1994). Plaintiff has submitted contemporaneous time records indicating that between April 6, 2011 and December 19, 2011, a total of 92.7 hours was spent consulting with the client, drafting the complaint, negotiating the settlement that ultimately fell through, conducting legal research, and preparing the default judgment motion papers. *See* Def. Mot., Siachos Decl., Ex. G. The Court has reviewed the billing records and finds that the level of detail is sufficient to meet the requisite standard.

In determining whether a reasonable number of attorney hours were expended, the court should "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case" and "[i]f the court determines that certain claimed hours are 'excessive, redundant, or otherwise unnecessary,' the court should exclude those hours in its calculation." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *Hensley v.*

11

*Eckerhart*, 461 U.S. 424, 434 (1983)). Here, plaintiff's counsel requests $25,747.50 in attorneys' fees, representing a total of 92.7 hours of legal work. *See* Def. Mot., Siachos Decl., Ex. G. Reasonable questions could be raised regarding whether all of the time at issue is appropriately charged to this one defendant and whether a reasonable client would be willing to pay for 92.7 hours for the work performed in this matter.

Upon examination of all relevant factors, the Court finds that the hours spent litigating this matter to be excessive. "The time and labor required for seeking a judgment by default, pursuant to Fed. R. Civ. P. 55 and based on the defendant's failure to plead or otherwise defend, as well as the level of skill required to perform the legal tasks in connection with it, are . . . *de minimis*." *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, No. 05 Civ. 10100, 2008 WL 2485407, at *9 (S.D.N.Y. June 18, 2008).

The bulk of the work was performed by Siachos, the partner with the highest billing rate. Given the straightforward nature of this case, it seems that an attorney of lesser experience could have performed some or all of this work. *See, e.g., Microsoft Corp. v. Computer Care Ctr., Inc.*, No. 06-CV-1429, 2008 WL 4179653, at *15-16 (E.D.N.Y. Sept. 10, 2008) (significant reduction warranted due to, in part, to use of senior staff to perform work that could have been done by lower billers). And, again, the experience of all of the individuals working on this matter remains undocumented in the record.

In sum, the attorneys' fees application is riddled with inaccuracies, insufficiencies and inconsistencies. Plaintiff failed to indicate to the Court the experience of the attorneys involved with this litigation, misstated a partner's billing rate on numerous invoice entries, and overcharged for legal work provided by students. Plaintiff has failed to justify the entry of an injunction, and the damages – other than attorneys' fees – are *de minimus*. The default motion

and damages proceedings were unopposed, and no novel issues of law were presented.  Based on an examination of all the factors, it is respectfully recommended that the fee award be reduced from plaintiff's requested amount of $25,747.50 to $15,000, which should be more than ample.  *See generally Labarbera v. J.E.T. Res., Inc.*, 396 F.Supp. 2d 346, 352 (E.D.N.Y. 2005) (noting that upon a finding that hours are excessive, "it is within the discretion of the district court to make and across the board percentage reduction").   Accordingly, the Court recommends that plaintiff be awarded $15,000 in attorneys' fees.

Plaintiff also requests costs in this action totaling $573.10, representing the $350.00 Court filing fee, the process service fee, the filing fees and postage.  *See* Def. Mot., Siachos Decl., Ex. G.  In light of plaintiff's documentation in the form of invoices for the requested fees, the Court finds these costs reasonable and appropriate and recommends that plaintiff be reimbursed the $573.10 in costs.

## CONCLUSION

For the reasons set forth herein, it is respectfully recommended that plaintiff's motion for default judgment be GRANTED, plaintiff be awarded the aggregate sum of $15,573.10 in attorneys' fees and costs, and plaintiff be DENIED a permanent injunction.

## OBJECTIONS

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude**

**further review of this report and recommendation either by the District Court or the Court of Appeals.** *Thomas v. Arn*, 474 U.S. 140, 145 (1985 ) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").


Dated: Central Islip, New York
       August 31, 2012

                                                  /s/ Gary R. Brown
                                                 GARY R. BROWN
                                                 United States Magistrate Judge